THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SHANNON ANDERSON SAEVIK,<br><br>Plaintiff,<br><br>v.<br><br>SWEDISH MEDICAL CENTER and REBECCA DAY, individually and as Clinic Operations Manager of its Organ Transplant and Liver Center,<br><br>Defendant. | CASE NO. C19-1992-JCC<br><br>ORDER |

This matter comes before the Court on the parties' cross-motions for summary judgment (Dkt. Nos. 89, 93). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and, for the reasons explained herein, GRANTS Defendants' motion (Dkt. No. 89) and DENIES Plaintiff's motion (Dkt. No. 93).

I.   **BACKGROUND**

In this employment discrimination case, Plaintiff brings suit against her former employer, Swedish Medical Center, and its former employee, Rebecca Day. (Dkt. Nos. 1-3 at 2–4, 90-1 at 19, 90-2 at 5–6, 91 at 2.) Plaintiff began working for Swedish as a patient services coordinator in 2008; she later worked as a referral scheduling coordinator for Swedish's Organ Transplant and Liver Center, which is where she met Ms. Day. (Dkt. Nos. 89 at 7, 93 at 4.) Initially, Plaintiff

and Ms. Day were colleagues. (*Id.*) However, in December 2018, Ms. Day was promoted to Interim Nursing Manager/Clinic Manager. (*Id.*) From this point until her September 2019 termination, Plaintiff reported to Ms. Day. (*Id.*)

According to Swedish, it terminated Plaintiff for timecard fraud. (Dkt. No. 89 at 7–20.) This followed prior disciplinary actions for insubordination and unprofessional conduct. (*Id.*) Plaintiff takes issue with Swedish's characterization. (Dkt. No. 112 at 2.) She asserts that her employment history was good and her termination—which, according to Swedish, is based on an on-the-clock off-site break—was pretextual. (*Id.*) Plaintiff alleges that, in fact, Ms. Day orchestrated Plaintiff's termination based on some sort of "vendetta." (Dkt. Nos. 93 at 10; 112 at 7.) This was due, in part, to Plaintiff's attempted whistleblowing and what Ms. Day deemed to be Plaintiff's excessive leave and accommodation requests, which she sought in order to address her and her family member's medical needs. (*See* Dkt. Nos. 1-3 at 2–4, 93 at 1–7.)

In the resulting complaint, Defendant asserts causes of action for violations of the Washington Law Against Discrimination ("WLAD"), Wash. Rev. Code § 49.60.010 *et seq.*, and the Family Medical Leave Act ("FMLA") 29 U.S.C. § 2601 *et seq.*, as well as tort-based wrongful termination and whistleblowing claims. (Dkt. No. 1-3 at 4–5.) The parties seek summary judgment[1] on all claims. (*See* Dkt. Nos. 89, 93.)

## II. DISCUSSION

### A. Legal Standard

The Court shall grant summary judgment if the moving party shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In making such a determination, the Court must view the facts and justifiable inferences to be drawn therefrom in the light most favorable to the

---

[1] Plaintiff seeks judgment on all claims, but she titles her motion as one seeking partial summary judgment; this is based on Plaintiff's supposition that, if summary judgment is granted to her on all of her claims, damages will need be determined at trial. (*See* Dkt. No. 93 at 1, 4.)

nonmoving party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986). Once a motion for summary judgment is properly made and supported, the opposing party must present specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Material facts are those that may affect the outcome of the case, and a dispute about a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Anderson*, 477 U.S. at 248-49.

### B. WLAD Claims

The WLAD prohibits employment discrimination based on, amongst other things, a physical disability. Wash. Rev. Code §§ 49.60.030(1), 49.60.180(1). Here, it is uncontested that Plaintiff's medical conditions, which at the time of her termination included median arcuate ligament syndrome, postural tachycardia syndrome, and recurring migraines, constitute such a disability. (*See* Dkt. No. 112 at 6, 11; *see generally* Dkt. Nos. 89, 110, 117.) Plaintiff asserts that, in order to accommodate this disability, she required shorter workdays and an extended work from home arrangement. (*See generally* Dkt. No. 1-3.) While Swedish was initially receptive to her accommodation requests, Plaintiff asserts that Swedish refused to continue her medical accommodations beyond May 2019[2] and eventually terminated her, in part, for requesting them. (*Id.*) Plaintiff brings WLAD claims for failure to accommodate, disparate treatment, hostile work environment, and retaliation. (*Id.* at 4–5.)

#### 1. Failure to Accommodate

Plaintiff's briefing indicates that Swedish unlawfully denied her request to extend a work from home arrangement beyond May 2019 and that Plaintiff sought to extend the arrangement as a medical accommodation while recovering from a January 2019 surgery.[3] (Dkt. Nos. 93 at 2, 6;

---

[2] Up to this point it is undisputed that Plaintiff sought and received the accommodations requested, albeit through informal means. (*See* Dkt. No. 93 at 6.)

[3] Plaintiff's complaint also references Swedish's denial of a 2017 work-from-home request, (Dkt. No. 1-3 at 2), but her briefing does not address this allegation, (*see generally* Dkt.

112 at 7–11.) According to the WLAD, an employer must take steps "reasonably necessary to accommodate an employee's condition." *Riehl v. Foodmaker, Inc.*, 94 P.3d 930, 934 (Wash. 2004). However, a claim based on a failure to accommodate must satisfy a notice element, *i.e.*, the employee must be able to show that she provided her employer with notice of her disability, thereby triggering the employer's duty to adopt reasonable measures to accommodate the disability. *Id.* at 934.

At issue here is whether Plaintiff can demonstrate that she provided sufficient notice. It is uncontroverted that Swedish's formal policies and procedures at the time required that she document her request for a medical accommodation and its supporting basis through Swedish's third-party claims manager, Sedgwick Claims Management Services. (*See* Dkt. Nos. 89 at 18, 21; 112 at 10.) Defendants provide evidence that Plaintiff failed to document her need to Sedgwick to extend her medical accommodation beyond May 2019, despite repeated instructions to do so. (*See, e.g*, Dkt. No. 90-6 at 121–22 (testimony from Swedish HR representative Gabriella Madsen that she instructed Plaintiff to send the supporting medical information to Sedgwick), Dkt. No. 91-1 (e-mail from Plaintiff dated May 20, 2019 conceding that she had not yet sent in the appropriate documentation because she was "overwhelmed will all my doctor apts [sic]").)

In attempting to rebut Defendants' evidence, Plaintiff provides the Court with what appear to be erroneous citations to the record, (*see* Dkt. No. 112 at 8 n.26 (referencing page 34 of Plaintiff's deposition, which is not contained in the referenced declaration)), uncorroborated self-

---

Nos. 93, 112, 118), so the Court will treat it as withdrawn. Plaintiff also alleges that Swedish refused to allow her to work in an office with natural light, which was necessary to alleviate Plaintiff's migraine symptoms. (Dkt. No. 112 at 11.) But Defendants present uncontroverted evidence that, in fact, Plaintiff received this accommodation. (*See* Dkt. No. 90-1 at 33–36 (testimony from Plaintiff confirming her use of an office with "large windows for natural light").) While Plaintiff suggests this was only begrudgingly provided, (*id.*), she provides no argument or legal authority for the notion that *how* she received the accommodation is relevant in determining whether Defendants violated the WLAD. (*See generally* Dkt. Nos. 93, 112.)

ORDER
C19-1992-JCC
PAGE - 4

serving testimony, (*see, e.g.*, Dkt. No. 113-13 at 3), unsupported conjecture, (*see, e.g.*, Dkt. No. 93 at 3), and conclusory statements, (*see, e.g.*, Dkt. No. 112 at 3). None of which support the assertions contained in her briefing and testimony that the documentation Defendants sought was unnecessary and, in any event, that she provided it. Given the nature of the evidence presented to the Court, Plaintiff fails to create a genuine factual dispute regarding her compliance with Swedish's notice requirements. *See Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003); *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002), *see also Gordon v. Virtumundo, Inc.*, 575 F.3d 1040, 1058 (9th Cir. 2009) (A court need not "comb through the record to find some reason to deny a motion for summary judgment.").

Summary judgment for Defendants is warranted on Plaintiff's WLAD failure to accommodate claim.

### 2. Disparate Treatment

Plaintiff asserts that Swedish terminated her in September of 2019 because of her ongoing need for medical accommodations, *i.e.*, her disability.[4] (Dkt. No. 93 at 10.) The WLAD prohibits such conduct, so long as Plaintiff was capable of performing her job with the benefit of reasonable accommodations. Wash. Rev. Code § 49.60.180; *Hines v. Todd Pac. Shipyards Corp.*, 112 P.3d 522, 529 (Wash. Ct. App. 2005). When considering a disparate treatment allegation such as this one, the Court utilizes the *McDonnell Douglas/Burdine* three-part burden allocation framework. *Hines*, 112 P.3d at 529. Under this framework, Plaintiff first bears the burden of proving a *prima facie* case of disparate treatment. *Id.* Once Plaintiff's case is established, the burden shifts to Defendants to present evidence of a legitimate non-discriminatory reason for the adverse action. *Id.* Finally, the burden shifts back to Plaintiff to

---

[4] In her briefing to the Court, Plaintiff makes a number of additional allegations regarding disparate treatment. (*See* Dkt. No. 112 at 14–18.) But she provides no argument or evidence demonstrating that the alleged actions altered the terms and conditions of her employment. (*See generally* Dkt. Nos. 93, 112.) Therefore, those allegations cannot support a disparate treatment claim under the WLAD. *See Kirby v. City of Tacoma*, 98 P.3d 827, 833 (Wash. Ct. App. 2004).

ORDER
C19-1992-JCC
PAGE - 5

show that Defendants' asserted reason was merely a pretext. *Id.*

Assuming *arguendo* that Plaintiff establishes a *prima facie* case of disparate treatment, Defendants present uncontroverted evidence of a legitimate non-discriminatory reason for Plaintiff's termination—time-card fraud. (*See* Dkt. No. 90-1 at 102 (Plaintiff's testimony that she took the break without clocking out to "caucus with the union"[5]).) Therefore, to avoid summary judgment, Plaintiff must put forth at least some evidence suggesting pretext. She presents none. (*See generally* Dkt. Nos. 93, 112.) Nor, frankly, is an allegation of pretext particularly plausible in this instance, where it is uncontroverted that Swedish terminated not only Plaintiff, but the two co-workers she took the break with—and Plaintiff was the only one of the three seeking medical accommodations. (Dkt. No. 92 at 2.)

Summary judgment for Defendants is warranted on Plaintiff's WLAD disparate treatment claim.

### 3. Hostile Work Environment

In addition, Plaintiff alleges that Ms. Day and other Swedish personnel engaged in a course of dealing that created a hostile work environment; this included Ms. Day's frequent insults and aggressions, her efforts to snoop into Plaintiff's personal medical records, and Ms. Madsen's comments regarding Plaintiff's need to return to work. (*See* Dkt. Nos. 93 at 11–12, 112 at 20.) To succeed in her hostile work environmental claim, Plaintiff must show, *inter alia*, treatment sufficiently objectionable and pervasive so as to affect the terms or conditions of employment *and* a connection between her protected class, *i.e.*, her disability, and the claimed treatment. *See Balkenbush v. Ortho Biotech Prods., L.P.*, 653 F. Supp. 2d 1115, 1122 (E.D.

---

[5] Plaintiff suggests that whether this was allowed under the collective bargaining agreement is an issue of disputed fact. (*See* Dkt. No. 112 at 8.) But she puts forth no evidence, other than her own uncorroborated testimony and a declaration from a co-worker lacking in foundation, to support this contention. (*See* Dkt. No. 115 at 1–2.) Affidavits or declarations supporting or opposing summary judgment must "set out facts that would be admissible in evidence." Fed. R. Civ. P. 56(c)(4).

Wash. 2009) (citing *Robel v. Roundup Corp.*, 59 P.3d 611, 616 (Wash. 2002)). As a matter of law, Plaintiff cannot make this showing.

First, the majority of Plaintiff's allegations lack a clear connection to her disability. *See Griffith v. Schnitzer Steel Industries*, Inc., 115 P.3d 1065, 1070 (Wash. Ct. App. 2005). This includes Ms. Day's alleged lack of concern for regional outreach programs, her "chaos-inducing changes to established working procedures," Ms. Day's insults "perceived on behalf of the entire staff," Ms. Day's acts of physical intimidation, and Ms. Day's obstructionism regarding Plaintiff's participation in her son's medical care. (Dkt. No. 112 at 11–12, 20.)

Second, to the extent the conduct has that connection, the conduct is not sufficiently severe or pervasive to have reasonably affected the terms of conditions of Plaintiff's employment. *See Glasgow v. Georgia-P. Corp.*, 693 P.2d 708, 712 (Wash. 1985). This includes Ms. Day's references to Plaintiff's "brain fog," Ms. Day's alleged snooping, Ms. Madsen's comments regarding not wanting to see any more doctor's notes, and Ms. Madsen's directive to Plaintiff "get your ass back to Seattle." (Dkt. No. 90-1 at 23.) "The WLAD is not intended as a general civility code . . . not everything that makes an employee unhappy is an actionable adverse action." *Alonso v. Qwest Commun. Co., LLC*, 315 P.3d 610, 617 (Wash. Ct. App. 2013).

Summary judgment for Defendants is warranted on Plaintiff's WLAD disability based hostile work environment claim.

### 4. Retaliation

Finally, Plaintiff alleges that Defendants retaliated against her for seeking medical accommodations. (Dkt. Nos. 93 at 12–13, 112 at 20–21.) As with her other WLAD claims, Plaintiff must first establish a *prima facie* case of retaliation. *See Lodis v. Corbis Holdings, Inc.*, 292 P.3d 779, 786 (Wash. Ct. App. 2013). She fails in this task. As discussed above, *see supra* Section II.B.1, her conclusory assertions and uncorroborated self-serving testimony, (*see* Dkt. Nos. 112 at 20–21, 114 at 5), are insufficient to establish a *prima facie* case. *See Hernandez*, 343 F.3d at 1112; *Villiarimo*, 281 F.3d at 1061.

Summary judgment is warranted for Defendants on Plaintiff's WLAD retaliation claim.

### C.     Tort-Based Claims

Plaintiff also asserts that her termination (1) violated public policy and (2) constituted impermissible retaliation for whistleblowing activities. (Dkt. Nos. 1-3 at 4–5, 93 at 17–19.)

#### 1.   Wrongful Termination

As a general rule, employees in Washington work at-will, meaning they can be terminated for any lawful reason. *See Rose v. Anderson Hay & Grain Co.*, 358 P.3d 1139, 1141 (Wash. 2015). The tort of wrongful termination in violation of public policy is a narrow exception to this doctrine. *See White v. State*, 929 P.2d 396, 407 (Wash. 1997). To successfully bring a claim, Plaintiff must plead and prove that her termination was motivated by reasons that contravene an important mandate of public policy. *Becker v. Cmty. Health Sys., Inc.*, 359 P.3d 746, 749 (Wash. 2015) (citing *Thompson v. St. Regis Paper Co.*, 685 P.2d 1081, 1089 (Wash. 1984)). The burden then shifts to the employer to plead and prove that the termination was motivated by other, legitimate, reasons. *Id*. As discussed above, Defendants have already offered evidence supporting legitimate reasons for Plaintiff's termination, for which Plaintiff presents no contravening evidence. *See supra* Section II.B.2.

#### 2.   Whistleblowing

Plaintiff's briefing indicates that she was fired, in part, for insubordination and defiance. (Dkt. Nos. 93 at 18, 112 at 23.) This followed (a) a refusal to sign after-the-fact time study forms to support Medicare and Medicaid billing practices, (b) "call[ing] out her managers" for the practice of placing transplant candidates into "deferral mode," and (c) report[ing] HIPAA violations. (Dkt. No. 112 at 12–13.) But it is undisputed that Plaintiff was terminated for timecard fraud—not insubordination or defiance. (*See generally* Dkt. Nos. 89, 93.) Moreover, Plaintiff does not present evidence supporting her contention that Swedish's conduct was, in fact, unlawful, and, therefore, an appropriate basis for whistleblowing. (*See* Dkt. Nos. 93 at 18, 112 at 23 (allegations lacking supporting citations to admissible evidence).) Nor does Plaintiff present

the Court with legal argument supporting the implied contention that a tort-based whistleblowing claim can be sustained through allegations involving retaliatory progressive discipline actions short of termination. (*See generally* Nos. 93, 112.) The Court need not consider allegations "unsupported by citations to the record or legal authority." *Cyntegra, Inc. v. IDEXX Laboratories, Inc.*, 322 F. App'x 569, 571 n.2 (9th Cir. 2009); *cf. Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) ("'[J]udges are not like pigs, hunting for truffles buried in briefs.'" (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991))).

Accordingly, summary judgment is warranted for Defendants on both of Plaintiff's tort-based claims.

### C. FMLA Claim

Plaintiff's remaining cause of action is based upon Swedish's alleged interference with her FMLA benefits. An employer may not "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided" under the FMLA. 29 U.S.C. § 2615(a)(1). Interference includes "discouraging an employee from using such leave." 29 C.F.R. § 825.220. Plaintiff's complaint and briefing assert numerous instances where Swedish allegedly interfered with and/or denied various FMLA requests that Plaintiff sought in order to care for herself and her son over the course of her employment. (*See* Dkt. Nos. 1-3 at 3–4, 93 at 13–16; 112 at 11, 21–22.) But like her WLAD claims, she provides only uncorroborated self-serving testimony to support these allegations. (*See* Dkt. Nos. 113-6 at 2–3, 120-12 at 2–7.) This is insufficient to withstand Defendants' motion for summary judgment. *Villiarimo*, 281 F.3d at 1061.

### III. CONCLUSION

For the reasons described above, Defendants' motion for summary judgment (Dkt. No. 89) is GRANTED and Plaintiff's motion for summary judgment (Dkt. No. 93) is DENIED. Plaintiff's complaint (Dkt. No. 1-3) is DISMISSED with prejudice.

//

//

1   DATED this 15th day of December 2021.

$\phantom{x}$

John C. Coughenour
UNITED STATES DISTRICT JUDGE